LANNY SCOTT HUCKABY,

          Plaintiff,

    v.

PAUL E. BRADLEY, as an
Individual and in his
official capacity as Employee
of Department of the Navy,
DEXTER ISAIAH CHRONIS,
as an Individual and in his
official capacity as Employee
of Department of the
Airforce, ANTONIO CORTEZ
DAVIS, as an Individual and
in his official capacity as
Employee of Department of the
Airforce, KEVIN LAMAR EVANS,
as an Individual and in his
official capacity as Employee
of Department of the
Airforce, TERRANCE TYRONE
JONES, as an Individual and
in his official capacity as
Employee of Department of the
Airforce, CELSO MALDONADO,
as an Individual and in his
official capacity as Employee
of Department of the
Airforce, XAIMARA OTERO-
ORTIZ, as an Individual and
in her official capacity as
Employee of Department of the
Airforce, RANDALL JAMES
PRILL, as an Individual and
in his official capacity as
Employee of Department of the
Airforce, BRYAN G. REESER, as
an Individual and in his
official capacity as Employee
of Department of the
Airforce, KENNETH FRANCES

No. 1:16-cv-4327 (NLH/KMW)

**OPINION**

ROTHWEIN, as an Individual
and in his official capacity
as Employee of Department of
the Airforce, MICHAEL EDDIE
RODRIGUEZ, as an Individual
and in his official capacity
as Employee of Department of
the Army, and OFFICER BOVA,
as an Individual and in his
official capacity as Employee
of Department of the Army or
Department of the Navy or
Department Of the Airforce,

Defendants.

**APPEARANCES**:

DAVID P. SCHROTH
795 PARKWAY AVENUE
SUITE A-3
TRENTON, NJ 08618
    On behalf of Plaintiff

ROBERT E. SPITZER
MAN NEILL O'NEILL & RIVELES LLC
240 CEDAR KNOLLS ROAD
SUITE 104
CEDAR KNOLLS, NJ 07927
    On behalf of Defendant Paul E. Bradley

DAVID V. SIMUNOVICH
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07102
    On behalf of Defendants Dexter Isaiah Chronis, Antonio
    Cortez Davis, Kevin Lamar Evans, Terrance Tyrone Jones,
    Celso Maldonado, Xaimara Otero-Ortiz, Bryan G. Reeser,
    Michael Eddie Rodriguez, and Officer Bova

DANIEL BIDDLE MCMEEN
JAMES BRENDAN JOHNSTON
GOLDEN ROTHSCHILD SPAGNOLA LUNDELL BOYLAN & GARUBO
1011 ROUTE 22 WEST

SUITE 300
BRIDGEWATER, NJ 08007
    On behalf of Defendants Randall James Prill and Kenneth
    Frances Rothwein


**HILLMAN**, District Judge

    This is a purported *Bivens*[1] action under the Fifth Amendment
Due Process Clause concerning the medical treatment Plaintiff
Lanny Scott Huckaby received by Defendants, various military
personnel, at a New Jersey military base.[2]  Before the Court are
three related motions to dismiss: (1) by Defendants Randall
James Prill and Kenneth Frances Rothwein, (2) by Defendants
Dexter Isaiah Chronis, Antonio Cortez Davis, Kevin Lamar Evans,
Terrence Tyrone Jones, Celso Maldonado, Xaimara Otero-Ortiz,
Bryan G. Reeser, Michael Eddie Rodriguez, and Charles Bova, and
(3) by Defendant Paul E. Bradley.  For the reasons that follow,
the Court finds Plaintiff cannot sustain a *Bivens* cause of
action.  The Court will grant all three motions to dismiss.

                              **I.**

    The Court takes its facts from Plaintiff's September 18,
2017 Amended Complaint.  On July 15, 2014, Plaintiff was making
a delivery to the Joint Base McGuire-Fort Dix-Lakehurst military

---

[1]    *Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics*, 403 U.S. 388 (1971).

[2]    Plaintiff's Amended Complaint identifies Defendants as
"officers/military personnel" who were members of the 87th
Security Forces Squadron.

base in Burlington County, New Jersey. While at the military base, Plaintiff advised military personnel there were handguns in the trailer attached to his vehicle. Plaintiff was arrested around 4:00 PM by Defendants. As he was being taken into custody, Plaintiff was instructed to remove his footwear. Plaintiff was then placed in a holding cell with his feet clothed only in socks.

At the time, Plaintiff had an open diabetic wound on the bottom of his right foot. Plaintiff advised Defendants of this wound and that he could not be without footwear or additional bandages to protect the wound from infection. He further explained that he was diabetic and that diabetic wounds often do not heal and are susceptible to infection. Plaintiff specifically asked Defendants to retrieve his shoes and bandages to protect the wound.

Plaintiff alleges he was in the holding cell from approximately 4:00 PM to midnight. Over the course of this time, Plaintiff's wound was visibly bloody, and blood seeped through his sock, leaving marks on the floor. Defendants retrieved gauze and bandages, but they refused to provide them to Plaintiff to protect his wound. Defendants refused to give Plaintiff his shoes, and further refused to contact medical care providers to determine the proper care for Plaintiff's wound.

Plaintiff's wound ultimately became infected. Plaintiff became visibly ill, and shortly after his release, Plaintiff sought medical care. Over the next weeks and months, the infection worsened. Plaintiff was consequently hospitalized from October 12, 2014 through November 7, 2014. Over the course of the next year, the infection eventually spread to Plaintiff's right leg bone. In November 2015, Plaintiff's lower right extremity was amputated just below the right knee. Plaintiff also suffered side effects, including septic shock and kidney damage. During his hospitalization, Plaintiff also went into cardiac arrest and is believed to have died before being resuscitated and revived by medical providers.

Plaintiff's Amended Complaint brings one count against Defendants: a Bivens claim for violation of the Fifth Amendment right to due process. Plaintiff argues Defendants "completely rejected the Plaintiff's request for medical assistance; denied the Plaintiff access to medical care, which he specifically requested; and denied the Plaintiff's request for simple Band-Aids, gauze and lace-less Croc shoes to protect the diabetic seeping wound on his right foot." The Amended Complaint alleges:

> The Due Process Clause of the Fifth Amendment to the United States Constitution does not allow defendants to inflict punishment on pretrial detainees. The denial of medical care when the Defendants were fully informed of the Plaintiff's medical condition and the Defendants'

abhorrent refusal to assist and protect the Plaintiff are tantamount to the infliction of punishment without due process.

Plaintiff asks this Court for compensatory damages, punitive damages, and attorneys' fees and costs.

Defendants filed their motions to dismiss on October 5, 2017 and October 6, 2017.[3]

## II.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it is brought as a <u>Bivens</u> action and under the Fifth Amendment to the United States Constitution.[4]

## III.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.

---

[3]  Defendants previously filed motions to dismiss on August 17, 2017.  Plaintiff filed opposition to those motions, attaching an Amended Complaint and asking the Court to permit the filing of the Amended Complaint.  As Plaintiff was permitted to amend as a matter of course at that time, the Court's September 12, 2017 Order dismissed the August 17, 2017 motions as moot, directed the filing of the Amended Complaint, and allowed the refiling of motions to dismiss in response to the Amended Complaint.

[4]  Plaintiff pleads this Court further has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  However, Plaintiff has not properly pleaded diversity jurisdiction, and the Court consequently rests its jurisdiction upon 28 U.S.C. § 1331.

Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly."). "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

**IV.**

The Court's analysis begins and ends with the 2017 United
States Supreme Court decision Ziglar v. Abbasi, 137 S. Ct. 1843
(2017). The Court begins with a brief look at the history of
Bivens actions, as the Supreme Court did in Ziglar.

While 42 U.S.C. § 1983 "entitles an injured person to money
damages if a state official violates his or her constitutional
rights[,] Congress did not create an analogous statute for
federal officials." Id. at 1854. Rather, the Supreme Court
decided in Bivens that, "even absent statutory authorization, it

would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." Id.

Since that time, the Supreme Court has "recognized what has come to be called an implied cause of action in two cases involving other constitutional violations" after recognizing such an action in Bivens: Davis v. Passman, 442 U.S. 228 (1979) and Carlson v. Green, 446 U.S. 14 (1980). In Davis, the Supreme Court "held that the Fifth Amendment Due Process Clause gave . . . a damages remedy for gender discrimination." Ziglar, 137 S. Ct. at 1854-55. In Carlson, the Supreme Court "held that the Eighth Amendment Cruel and Unusual Punishments Clause gave . . . a damages remedy for failure to provide adequate medical treatment." Id. at 1855. Bivens, Davis, and Carlson are "the only instances in which the Court has approved of an implied damages remedy under the Constitution." Id.

Over time, the Court's approach to recognizing implied causes of actions changed, and "the Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Id. at 1857. There is a two-step framework for determining whether there is a cognizable Bivens claim. First, the court must determine whether the case presents a new Bivens context. If so, the court must determine whether special

factors counsel hesitation.  If so, a <u>Bivens</u> remedy is

unavailable.


**A. New <u>Bivens</u> Context**

The Supreme Court defined the analysis for "determining

whether a case presents a new <u>Bivens</u> context" as follows:

> If the case is different in a meaningful way from
> previous <u>Bivens</u> cases decided by this Court, then the
> context is new.  Without endeavoring to create an
> exhaustive list of differences that are meaningful
> enough to make a given context a new one, some examples
> might prove instructive.  A case might differ in a
> meaningful way because of the rank of the officers
> involved; the constitutional right at issue; the
> generality or specificity of the official action; the
> extent of judicial guidance as to how an officer should
> respond to the problem or emergency to be confronted;
> the statutory or other legal mandate under which the
> officer was operating; the risk of disruptive intrusion
> by the Judiciary into the functioning of other branches;
> or the presence of potential special factors that
> previous <u>Bivens</u> cases did not consider.

<u>Id.</u> at 1859-60.

In considering whether there is a new <u>Bivens</u> context, the

Supreme Court has advised that "even a modest extension is still

an extension" and that even small differences can be "meaningful

ones" that would create a new <u>Bivens</u> context, although some may

"be so trivial that they will not suffice to create new <u>Bivens</u>

context."  <u>Id.</u> at 1864, 1865.

In the case before this Court, Plaintiff seeks a _Bivens_ remedy for a pretrial detainee alleging a Fifth Amendment due process claim against military personnel for deliberate indifference to a serious medical need.  The Court finds this to be a new _Bivens_ context.  This case does not fall within the confines of _Bivens_ itself, which concerned a Fourth Amendment search and seizure.  While _Davis_ allowed a _Bivens_ claim under the Fifth Amendment Due Process Clause, that was in the context of an administrative assistant suing a Congressman for gender discrimination, starkly different facts than are present here. There is no employment relationship, nor any kind of claim for discrimination; the fact that this suit is also brought under the Fifth Amendment Due Process Clause does not bring it within the confines of _Davis_.

_Carlson_ concerned an Eighth Amendment Cruel and Unusual Punishment claim for failure to provide adequate medical treatment.  While there are similarities here, as the gravamen of Plaintiff's claim is inadequate medical care, there are also meaningful, non-trivial differences present.  _Carlson_ was an Eighth Amendment claim, while Plaintiff brings a Fifth Amendment claim.  See _id._ at 1864 ("The constitutional right is different here, since _Carlson_ was predicated on the Eighth Amendment and this claim is predicated on the Fifth.").  The plaintiff in _Carlson_ was also an inmate at a federal prison, unlike Plaintiff

here, who identifies himself at the time as a pretrial detainee. Defendants in this case are also all military personnel, unlike the defendants in <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>.

The Court finds Plaintiff's Fifth Amendment claim is a new <u>Bivens</u> context, as it is meaningfully different from <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>. Accordingly, the Court now considers whether there are special factors present that counsel hesitation in this Court recognizing a <u>Bivens</u> remedy.

**B. Special Factors Counselling Hesitation**

"[A] <u>Bivens</u> remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" <u>Id.</u> at 1857.

> [The Supreme] Court has not defined the phrase "special factors counselling hesitation." The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.

<u>Id.</u> at 1857-88.

> It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others. It is true that, if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations. Yet the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide. Those matters include the burdens on Government employees who are sued

12

> personally, as well as the projected costs and
> consequences to the Government itself when the tort and
> monetary liability mechanisms of the legal system are
> used to bring about the proper formulation and
> implementation of public policies. These and other
> considerations may make it less probable that Congress
> would want the Judiciary to entertain a damages suit in
> a given case.

Id. at 1858.

The Court further advised that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id. "For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" Id. (alterations in original) (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007)). The Court addresses this consideration first.

Plaintiff has another case pending before this Court, brought pursuant to the Federal Tort Claims Act (Docket No. 17-6332). In Carlson, the Supreme Court found no authority "in the Federal Tort Claims Act (FTCA) or its legislative history to show that Congress meant to pre-empt a Bivens remedy or to create an equally effective remedy for constitutional violations." 446 U.S. at 19. However, the Southern District of New York reconsidered this in light of Ziglar:

Although the Supreme Court considered the existence of the FTCA remedy in Carlson, and nevertheless created an implied private right of action in that case, the Supreme Court's recent decision in Ziglar indicates that hesitation is nevertheless appropriate today. In emphasizing that "expanding the Bivens remedy is now considered a 'disfavored' judicial activity," the Supreme Court observed that its conclusion in Carlson "might have been different if [it] were decided today." Therefore, despite the fact that previously, the FTCA and Bivens were considered "parallel, complementary causes of action," the Court believes that, in light of the Supreme Court's recent decision in Ziglar, the existence of the alternative remedial structure is nevertheless a factor counselling hesitation in extending an implied damages remedy . . . .

Morgan v. Shivers, No. 14-7921, 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018). But see Linlor v. Polson, 263 F. Supp. 3d 613, 620-21 (E.D. Va. 2017) (deciding, after the Ziglar decision, that "the Supreme Court has squarely held that the FTCA does not provide an alternative remedial process bearing on the availability of a Bivens remedy").

The Court initially takes note of two potential concerns: (1) Plaintiff is asserting his claim against individual defendants, not the United States, and (2) Plaintiff's Amended Complaint alleges a due process violation under the United States Constitution. "[U]nder the relevant provisions of the FTCA, the United States is the only proper defendant in a suit for personal injuries arising out of the negligence of federal employees." Dilg v. U.S. Postal Serv., 635 F. Supp. 406, 407 (D.N.J. 1985) (citation omitted) (citing 28 U.S.C. §§ 1346(b),

2679(a)).  Further, federal constitutional violations "are not cognizable under the FTCA."  Alexander v. Ortiz, No. 15-6981, 2018 WL 1399302, at *16 (D.N.J. Mar. 20, 2018); see FDIC v. Meyer, 510 U.S. 471, 477-78 (1994) (stating that "§ 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA," and thus, "[b]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right"); Vanderklok v. United States, 868 F.3d 189, 201 (3d Cir. 2017) ("There are two types of claims that are exempt from the general rule that the FTCA provides the exclusive means for relief: first, claims that are 'brought for a violation of the Constitution of the United States,' and second, claims that are 'brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.'" (quoting 28 U.S.C. § 2679(b)(2)(A), (B))).

Nonetheless, Plaintiff has brought a separate suit, against the United States, asserting a claim for negligence.  While the named defendants, and the legal bases, are different, the factual bases are the same, as is the nature of the request for relief: damages.  Moreover, it would appear that the elements of negligence are somewhat easier for a plaintiff to prove than a claim of an official's deliberate indifference to a serious

medical need.[5] On balance, the Court finds the availability of a

remedy against the United States on a claim of negligence under

the FTCA, in light of <u>Ziglar</u>, is a factor weighing against the

Court recognizing a <u>Bivens</u> remedy here.

Defendants ask the Court to also consider the Military

Claims Act as an alternative remedial scheme. 10 U.S.C.

§ 2733(a) provides:

> Under such regulations as the Secretary concerned may
> prescribe, he, or, subject to appeal to him, the Judge
> Advocate General of an armed force under his
> jurisdiction, or the Chief Counsel of the Coast Guard,
> as appropriate, if designated by him, may settle, and

---

[5] "The FTCA 'does not itself create a substantive cause of
action against the United States; rather, it provides a
mechanism for bringing a state law tort action against the
federal government in federal court.'" <u>Galloway v. United
States</u>, No. 14-6372, 2017 WL 5172393, at *3 (D.N.J. Nov. 8,
2017) (quoting <u>In re Orthopedic Bone Screw Prod. Liab. Litig.</u>,
264 F.3d 344, 362 (3d Cir. 2001)). "FTCA claims are governed by
the substantive tort law of the state where the acts or
omissions occurred." <u>Id.</u> In New Jersey, "[t]o prevail on a
claim of negligence, a plaintiff must establish four elements:
(1) that the defendant owed a duty of care; (2) that the
defendant breached that duty; (3) actual and proximate
causation; and (4) damages." <u>Id.</u> at *4 (quoting <u>Fernandes v.
DAR Dev. Corp.</u>, 119 A.3d 878, 885-86 (N.J. 2015)). A claim of
deliberate indifference places a higher burden of proof on a
plaintiff. A deliberate indifference claim requires plaintiffs
to "demonstrate (1) that the defendants were deliberately
indifferent to their medical needs and (2) that those needs were
serious." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999)
(Eighth Amendment deliberate indifference claim); <u>see also</u>
<u>Fuentes v. Wagner</u>, 206 F.3d 335, 344 (3d Cir. 2000) (holding
that a pretrial detainee is entitled to no less protection than
a sentenced inmate is entitled to under the Eighth Amendment);
<u>Alpheaus v. Camden Cty. Corr. Facility</u>, No. 17-180, 2017 WL
2363001, at *7 (D.N.J. May 31, 2017) ("Conduct that constitutes
negligence does not rise to the level of deliberate indifference
. . . .").

pay in an amount not more than $ 100,000, a claim against the United States for –

. . . .

(3) personal injury or death . . . .

The Seventh Circuit acknowledged that the cap on awards and the existence of discretion might mean that the Military Claims Act is "not [a] full substitute for a <u>Bivens</u> remedy," but stated it took two things from the Act: "[F]irst, Congress has decided that compensation should come from the Treasury rather than from the pockets of federal employees; second, plaintiffs do not need a common-law damages remedy in order to achieve some recompense for wrongs done them." <u>Vance v. Rumsfeld</u>, 701 F.3d 193, 201 (7th Cir. 2012).[6] This Court agrees with these observations.

Viewing the FTCA and the Military Claims Act together, the Court finds there are alternative remedial schemes. The Court reaches this conclusion even though the claims and accompanying relief may differ. <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1862-63 (finding injunctive relief and a habeas remedy can constitute alternative methods of relief).

In any event, "even in the absence of an alternative, a <u>Bivens</u> remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for

---

[6] Like the FTCA, the Military Claims Act similarly provides for relief for a claim against the United States, not a claim against individual defendants.

a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" Wilkie, 551 U.S. at 550 (quoting Bush v. Lucas, 462 U.S. 367, 378 (1983)). "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of a federal-court jurisdiction under Article III." Ziglar, 137 S. Ct. at 1858.

The Supreme Court stated "[s]ometimes there will be doubt because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." Id. The Court cited Chappell v. Wallace, 462 U.S. 296 (1983) in support of that statement, specifically pinpointing that the military is such an area by parenthetical. Chappell rejected a Bivens remedy for enlisted personnel against their superior officers. While Plaintiff here is not an enlisted person bringing a claim against a superior, the Court finds the Supreme Court's reasoning in that case instructive. The Court reasoned:

> The special status of the military has required, the Constitution has contemplated, Congress has created, and this Court has long recognized two systems of

> justice, to some extent parallel: one for civilians and
> one for military personnel. The special nature of
> military life – the need for unhesitating and decisive
> action by military officers and equally disciplined
> responses by enlisted personnel – would be undermined by
> a judicially created remedy exposing officers to
> personal liability at the hands of those they are charged
> to command. . . .
>
> Also, Congress, the constitutionally authorized
> source of authority over the military system of justice,
> has not provided a damages remedy for claims by military
> personnel that constitutional rights have been violated
> by superior officers. Any action to provide a judicial
> response by way of such a remedy would be plainly
> inconsistent with Congress' authority in this field.

Id. at 303-04. Similar considerations were weighed in United States v. Stanley, 483 U.S. 669, 683 (1987) ("The 'special facto[r]' that 'counsel[s] hesitation' is not the fact that Congress has chosen to afford some manner of relief in the particular case, but the fact that congressionally uninvited intrusion into military affairs by the judiciary is inappropriate." (alterations in original)).

The Court finds the fact that military personnel are the defendants in this case to be particularly relevant. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001) ("Since Carlson we have consistently refused to extend Bivens liability to any new context or new category of defendants."); see also Ziglar, 137 S. Ct. at 1857 ("[T]he Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity. This is in accord with the Court's observation that it has 'consistently refused to extend Bivens to any new context or new

category of defendants.'" (citations omitted) (first quoting
Iqbal, 556 U.S. at 675; and then quoting Malesko, 534 U.S. at
68)). The Court considers military personnel to be a new
category of defendants, and a category that, under admittedly
different circumstances, the Supreme Court has refused to extend
a Bivens remedy to. See Stanley, 483 U.S. 669; Chappell, 462
U.S. 296.

In Vanderklok, 868 F.3d 189, the Third Circuit considered
"whether a First Amendment claim against a [Transportation
Security Administration (TSA)] employee for retaliatory
prosecution . . . exists in the context of airport security
screenings." Id. at 194. In determining that it does not, the
Third Circuit found there were special factors counseling
hesitation. Id. at 209. The Third Circuit noted that "TSA was
created in response to the terrorist attacks of September 11,
2001, specifically for the purpose of securing our nation's
airports and air traffic" and that the claim in that case "can
be seen as implicating 'the Government's whole response to the
September 11 attacks, thus of necessity requiring an inquiry
into sensitive issues of national security.'" Id. at 206
(quoting Ziglar, 137 S. Ct. at 1861).

> "The Supreme Court has never implied a Bivens remedy in
> a case involving the military, national security, or
> intelligence." To the contrary, it has recognized that
> "[m]atters intimately related to foreign policy and
> national security are rarely proper subjects for

20

judicial intervention." In recognition of that, national security decisions, insofar as they relate to foreign relations and the military, have, to a large extent, been insulated from judicial review. . . . Although there is no doctrine depriving us of jurisdiction, the reluctance of the Supreme Court to weigh in on issues of national security strongly suggests that we too should hesitate to create a remedy when those issues are in play.

Id. at 206-07 (footnotes omitted) (citations omitted) (first quoting Doe v. Rumsfeld, 683 F.3d 390, 394 (D.C. Cir. 2012); and then quoting Haig v. Agee, 453 U.S. 280, 292 (1981)).

The Third Circuit noted that "TSA employees . . . are tasked with assisting in a critical aspect of national security – securing our nation's airports and air traffic." Id. at 207. The Court determined that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." Id. at 208 (quoting Wilkie, 551 U.S. at 562).

The Court recognizes the broader national security concerns that were present in Vanderklok than in this case. Nonetheless, that the incident in this case took place on a military base, and that Defendants are military personnel, is not lost on this Court, and the significance of that cannot be overlooked. The Court notes that the "impact on governmental operations," "the burdens on Government employees who are sued personally," and "the projected costs and consequences to the Government itself," Ziglar, 137 S. Ct. at 1858, warrant special consideration when

military personnel are involved.  The Court finds these to be special factors causing the Court hesitation.

Ultimately, the question for this Court "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?"  Id. at 1857 (quoting Bush, 462 U.S. at 380).  In the unique context of this case, the Court has sufficient hesitation such that it concludes it should not be the courts.

**V.**

The Court finds Plaintiff's Amended Complaint presents a new Bivens context and that special factors weigh against the Court recognizing a Bivens remedy under the circumstances presented in Plaintiff's Amended Complaint.[7]  The Court will grant the pending motions to dismiss.[8]

An appropriate Order will be entered.


Date: __April 30, 2018__              __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[7]    The Third Circuit has directed in civil rights cases the "district courts must offer amendment irrespective of whether it is requested when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  The Court finds any amendment would be futile in this case, as Plaintiff's claim is barred by Ziglar.

[8]    As the Court finds Plaintiff has not pleaded an actionable Bivens claim, the Court does not address Defendants' qualified immunity arguments.